a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JEREMY RACHAL #590548,               CIVIL DOCKET NO. 5:22-CV-00641
Plaintiff                                                   SEC P

VERSUS                                          JUDGE ELIZABETH E. FOOTE

TIM HOOPER ET AL,               MAGISTRATE JUDGE PEREZ-MONTES
Defendants

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by pro se Plaintiff Jeremy Rachal ("Rachal"). Rachal is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. He challenges his second-degree murder conviction in the First Judicial District Court, Caddo Parish.

Because Rachal cannot meet his burden of proof under § 2254(d), his Petition (ECF No. 1) should be DENIED and DISMISSED WITH PREJUDICE.

## I.    Background

Rachal pleaded guilty to second-degree murder and was sentenced to life in prison at hard labor. According to the state appellate court, "[h]e made his plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), known as an *Alford* plea, and *State v. Crosby*, 338 So. 2d 584 (1976), known as a *Crosby* plea." *State v. Rachal*, 53,398, p. 1 (La.App. 2 Cir. 7/22/20); 300 So.3d 483, 487.

The facts of the case were outlined by the Louisiana Second Circuit Court of Appeal:

1

On May 11, 2015, a fire was reported at the Kingwood Forest Apartments in Shreveport, Louisiana. The fire department was dispatched to the scene and was able to gain control of the fire and limit the damage. Investigators determined that an unknown person had intentionally set the fire in the bedroom of the apartment. Although the entire apartment was saturated in gasoline, the fire did not burn the living room. An unburned victim was found with a fatal gunshot to his head. Investigators determined that someone had set the fire in an attempt to conceal the victim's murder. The victim, Jed Howard, lived in the apartment.

Mr. Howard's vehicle was later found ablaze in a wooded area. Video footage from a house near the site showed a man drive the stolen vehicle into the woods and leave the vehicle there. An hour later, a second vehicle parked near the woods and a man exited the vehicle. The man walked into the woods and then later exited the woods. Approximately an hour later, a man walked into the woods with a can of gasoline and then exited. The man returned forty-five minutes later, at which time the fire was ignited.

Police released the video to the public. The defendant's siblings, Candice Rachal and Dustin Rachal, along with the defendant's mother, Shelia Rachal, identified the defendant as the man in the video footage. The second vehicle in the video footage was that of Dustin Rachal. Dustin Rachal told police he had driven his brother to the woods. John Mosley, a friend of Rachal, admitted that he drove Rachal to a gas station where Rachal bought gasoline and a box of matches. The box of matches identified by John Mosley was the same as the box of matches found at the side of the victim's burned vehicle.

Several witnesses identified recent burns on Rachal. He was found to have purchased medical supplies indicative of a burn treatment around the same time as the two fires. Friends and family members returned items to the police or told the police of items that Rachal had stolen from the apartment of the victim. The returned items matched descriptions and serial numbers of items missing from the victim's apartment. Additional items in the defendant's possession included the victim's clothing along with a muddy pair of boots that matched the boots from the video footage. John Mosley also admitted that he had sold a watch, gold rings, cocaine, and two .38 revolvers for the defendant.

Ashley Coleman, a fiancée of a friend of Rachal, told police that she overheard Rachal admit to the murder of the victim. She stated that

she heard Rachal say that he placed a pillow over the victim's head and then shot him. Ms. Coleman's account of the murder matched the investigator's determination even though such information had not been made public. Finally, after his arrest, Rachal himself confessed to the murder via an inmate electronic tablet wherein he stated: I cant live with what ive done. My name is Jeremy Rachal and I want to confess to the murder I'm here at CCC for I did kill him and set his house on fire and also my friend Derrick Thomas told me he did do the murder he's on because Smurf the victim used to beat him up everyday for having ⸱⸱⸱ with his girl and I say all this under oath... Jeremy Rachal[.]

*Rachal*, 300 So.3d at 487–89, *writ denied*, 2020-01249 (La. 1/12/21); 308 So.3d 713, *and writ denied*, 2020-01198 (La. 1/12/21); 308 So.3d 715.

Rachal was indicted for second-degree murder and aggravated arson. ECF No. 37-3 at 11. The Indigent Defender's Office was appointed to represent Rachal, and Michelle Andrepont ("Andrepont") became Rachal's attorney. *Id.* at 8. The trial court found probable cause after a conducting a preliminary examination. *Id.*

At a subsequent court proceeding, Rachal expressed his desire to fire Andrepont and obtain new counsel. ECF No. 37-7 at 238. He was held in contempt for using profanity in speaking to the judge and was sentenced to 90 days imprisonment. *Id.*

At the next court hearing, another public defender stood in for Andrepont. Rachal requested new counsel. ECF No. 37-6 at 173; 37-7 at 247. At a subsequent hearing, Rachal informed the judge that he wanted to represent himself and had prepared a motion in limine and subpoena duces tecum. He again complained about Andrepont's representation. ECF No. 37-7 at 40. The judge ruled that Rachal could represent himself with Andrepont as standby counsel. *Id.* at 50.

The following month, Rachal requested the appointment of counsel other than Andrepont. *Id.* at 62. However, he ultimately agreed to Andrepont's representation. *Id.* at 65. Andrepont filed a subpoena duces tecum on Rachal's behalf. *Id.* Rachal later filed a pro se motion to quash the indictment due to a speedy trial violation. He also requested all transcripts and audio recordings of his court proceedings. *Id.* at 108.

Ultimately, on July 29, 2018, Rachal entered a guilty plea to second-degree murder with an agreed sentence of life imprisonment. *Id.* at 118. Andrepont noted that there was a pending offer by the State for Rachal to plead to a lesser offense, but Rachal insisted on pleading guilty to second-degree murder while maintaining his innocence and his right to appeal. ECF No. 37-7 at 117-18.

The trial judge conducted a colloquy under *Boykin v. Alabama*, 395 U.S. 238 (1969). The State provided the following factual basis:

> The State alleges that on or about May 11, 2015, Jed Howard was murdered at Kings Terrace Apartments. There was a fire set at that time. We subsequently learned that the victim had suffered a gunshot to the top of his heard and that the fire was set in his apartment. His car was also stolen at that time. It came up torched on Camrose Street, the 3800 block of Camrose Street. There was video surveillance on Camrose Street that the State alleges shows the defendant coming to the scene and leaving the scene after the car was torched as well. The State would also note that the defendant suffered a severe burn during this time period providing inconsistent statements as to how the burns occurred indicating to his employer that the burns occurred at home, indicating to his mother that the burns occurred at work. Further, there was a television that was taken from the victim's home that was subsequently sold to the defendant's sister or brother and that TV was ID'd as one of the -- a TV that was taken from the victim's home. Further, the sister corroborates that the vehicle that was driven by the -- that was used to torch the vehicle was driven by the defendant's brother, Dustin, and the car was owned by his sister, both

identified the defendant as being present at the torching. And finally, the State alleges that there is a tablet that was used at CCC that confirms the event admitted by the defendant that we intended to show at trial.

ECF No. 37-7 at 126-27.

Pursuant to his *Alford* plea, Rachal did not admit the factual allegations. The judge found that the plea was free and voluntary. Rachal was sentenced accordingly. *Id.*

On appeal, counsel asserted that the trial court abused its discretion in finding the plea was knowing and voluntary and erred in failing to rule on Rachal's pending pro se motion in limine. ECF No. 37-7 at 183-89. In a pro se brief, Rachal asserted the following: (1) ineffective assistance of counsel deprived him of the right to a speedy trial; (2) irreconcilable conflict deprived him of effective assistance of counsel; (3) the State's failure to produce the alleged exculpatory information he sought from the Caddo Parish Sheriff's Office ("CPSO") violated *Brady v. Maryland*, 373 U.S. 83 (1963); (4) the State failed to comply with *Alford* by showing strong evidence of his guilt; and (5) his guilty plea was not free and voluntary. ECF No. 37-7 at 265-93.

The appellate court affirmed the conviction and sentence. *Rachal*, 300 So.3d at 483. Rachal filed a writ application in the Louisiana Supreme Court, but only presented the claims raised in his pro se appellate brief to the Second Circuit. *State v. Rachal*, 2020-01249 (La. 1/12/21); 308 So.3d 713; 2020-01198 (La. 1/12/21); 308 So.3d 715.

Rachal did not seek collateral review in the state courts. His conviction became final under the AEDPA on April 12, 2021, 90 days after the Louisiana Supreme Court denied writs. His § 2254 Petition was filed within one year of that date. The undersigned has recommended denial of a motion to consolidate this case with another habeas case. ECF No. 40.

## II.  Law and Analysis

### A.  Habeas Corpus Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may only grant relief if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court decision is deemed "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Jenkins v. Hall*, 910 F.3d 828, 832 (5th Cir. 2018) (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"It is an unreasonable application of Supreme Court precedent 'if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Id.*

6

(quoting *Salts v. Epps*, 676 F.3d 468, 473–74 (5th Cir. 2012)).  The "state court's findings of fact are entitled to a presumption of correctness" that may be overcome only by "clear and convincing evidence." *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005).

To obtain habeas review, a petitioner must first exhaust state court remedies as to each claim raised by presenting the federal nature of each claim to each appropriate state court in a procedurally proper manner.  *See O'Sulllivan v. Boerckel*, 526 U.S. 838 (1999); *Duncan v. Henry*, 513 U.S. 364 (1995) (per curiam); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).  A petitioner must give the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon a constitutional claim." *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The fair presentation requirement is satisfied if the federal habeas claim is the "substantial equivalent" of that presented to the state courts.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

A federal claim is not fairly presented if the state court must read beyond the petition or brief to find it.  *Baldwin v. Reese*, 541 U.S. 27 (2004).  A claim is unexhausted "if a petitioner presents new legal theories or entirely new factual claims in his petition to the federal court." *Wilder*, 274 F.3d at 259.  Under the AEDPA, the federal courts are without power to grant relief on unexhausted claims. *Kunkle v. Dretke*, 352 F.3d 980, 988 (5th Cir. 2003), *cert. denied*, 542 U.S. 954 (2004).

If a state court clearly and expressly bases its dismissal of a claim on a state procedural rule that provides an independent and adequate ground for the dismissal, or the petitioner fails to exhaust state remedies and his claims would now be procedurally barred by the state courts, the claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51 (1991); *see also Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

**B.** **Rachal's claim regarding the voluntariness of his guilty plea is unexhausted and procedurally defaulted.**

Rachal alleges that his right to due process was violated under the Fourteenth Amendment to the United States Constitution because his guilty plea was involuntary. He claims the plea was coerced by the court system and Sheriff's Office. ECF No. 1-1 at 16. This claim was presented to the Louisiana Second Circuit Court of Appeal through the brief filed by Rachal's attorney, but the substance of the claim was not presented to the Louisiana Supreme Court. ECF No. 38-8 at 79.

Although Rachal mentioned the Fourteenth Amendment in his brief to the Louisiana Supreme Court, his supporting argument is based on an allegedly incomplete record on appeal. *Id.* at 87-88. He suggested that "the Court of Appeal determination to affirm his conviction and sentence(s) are erroneous where he was

denied a complete record on appeal of all the evidence upon which the judgment is based." ECF No. 37-8 at 88. Rachal complained that his guilty plea should be set aside because of inaccuracies in the transcript and the omission of audio recordings from the record—not because it was coerced. *Id.* In his habeas Petition, however, Rachal argues that his guilty plea should be set aside because it was involuntary. Therefore, the habeas claim is not the "substantial equivalent" of that presented to the state courts. *See Whitehead*, 157 F.3d at 387.

Because Rachal presents a new legal theory to this Court in support of his Fourteenth Amendment claim, it is unexhausted. *See Wilder*, 274 F.3d at 259-60. However, if Rachal attempted to go back and raise the federal claim in a post-conviction application in State court, it would be procedurally barred because it was litigated by the Second Circuit on direct appeal. *See* La. C. Cr. P. art. 930.4(A) (precluding a Louisiana court from considering the merits of a claim that has already been raised on direct appeal). Therefore, Rachal's claim regarding his guilty plea is unexhausted, but procedurally defaulted. *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (unexhausted claims become procedurally defaulted if "the state court to which the prisoner would have to present his claims in order to exhaust them would find the claims procedurally barred"); *Ochoa v. Davis*, 750 F. App'x 365, 370 (5th Cir. 2018).

Federal habeas review of this claim is barred because Rachal cannot "demonstrate cause for the default and actual prejudice" or that a failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S.

at 750-51; *Finley*, 243 F.3d at 220.    Rachal does not claim that he failed to understand the plea or its consequences—and the record make clear that he did.    In fact, Rachal made the plea offer to the State.    ECF No. 37-7 at 118.    Rather, Rachal argues that the plea was a result of coercion.    However, Rachal admitted that he was pleading guilty because it was in his "best interest."    ECF No. 37-7 at 118. When the judge asked if anyone forced or coerced Rachal into pleading guilty, he responded:  "The sheriff's office, you know, the court system.    Yeah, in so many words, yeah, but I still want to go – follow through with this plea."  ECF No. 37-7 at 124.    Rachal agreed that nobody said to him, "You're going to plead guilty to the charge."    *Id.* at 125.    Rachal presents no cause for his failure to present the same argument to the Louisiana Supreme Court; he points to no prejudice; and there would be no fundamental miscarriage of justice by the Court's refusal to address the claim.

### C.    There was sufficient factual basis for the plea.

Rachal argues that his right to due process and equal protection of the law was violated because the factual basis for the plea was insufficient under *Alford*. Considering his protestation of innocence, Rachal claims the trial court failed to afford him an opportunity to rebut the factual basis.  ECF No. 1-1 at 42.

A valid *Alford* plea requires that the record contain "strong evidence of actual guilt."  *Alford*, 400 U.S. at 37.    Under *Alford*, when a defendant pleads guilty while maintaining his innocence, it is constitutional error to accept the plea without

ascertaining that there is a factual basis to support it. *Orman v. Cain*, 228 F.3d 616, 621 (5th Cir. 2000).

 The Louisiana Second Circuit addressed this claim under *Alford*, explaining:

> The standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses. Rather, the standard is whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea represents a voluntary and intelligent choice among the alternatives. Appellate courts have used evidence adduced at evidentiary hearings, such as a preliminary examination or a hearing on a motion to suppress, to find a factual basis to support an *Alford* plea.

*Rachal*, 300 So. 3d at 493 (citations omitted).

 The appellate court found the factual basis sufficient because it provided details of the murder, the arsons, and Rachal's injuries, which corroborated his involvement. *Id.* at 493-94.   It also linked Rachal to both arsons and the victim's property. *Id.*  The Second Circuit also noted the details about witnesses' statements and evidence against Rachal that allowed the trial court to find probable cause.

 Rachal fails to show that the application of *Alford* in his case was contrary to law or objectively unreasonable.  There was strong evidence of Rachal's guilt, even without consideration of the tablet confession.  The factual basis was sufficient. Rachal suggests that an "informal trial" would have allowed him to rebut the State's case and obtain relief under La. C.Cr. P. art. 778, which provides for motions of acquittal at the close of the State's case in a bench trial.  ECF No. 1-1 at 46. However, nothing in *Alford* or other clearly established federal law requires an evidentiary hearing or "informal trial" prior to the court's acceptance of an *Alford*

plea. There is no requirement to hear a defendant's version of the facts. The only requirement is strong evidence of guilt to provide a factual basis for the plea. This does not mean that the state trial court is required to make a factual finding of guilt. *See Jones v. Cain*, 2010 WL 3312592, *10 (E.D. La. 2010). Rachal could have gone to trial and testified to present his version of the facts. He fails to meet the standard for habeas relief as to this claim.

### D.    Rachal cannot establish ineffective assistance of counsel.

#### 1.    Conflict of interest.

Rachal argues that he received ineffective assistance of counsel due to an "irreconcilable conflict." ECF No. 1-1 at 26. He argues that statements made by Andrepont to the Attorney Disciplinary Board and the Louisiana Bar Association in response to his complaints prove his alleged conflict. *Id.* Rachal maintains that the trial court compelled him to proceed with Andrepont as his attorney. Thus, prejudice should be presumed.

Rachal did not raise the same argument in his brief to the Louisiana Supreme Court. There, he merely argued that the record was incomplete. As discussed above, Rachal's claim is now unexhausted but procedurally defaulted because Louisiana courts would dismiss the claim under Article 930.4(A).

However, even if this claim was properly exhausted, it is meritless. First, it is "well-established that a valid guilty plea waives all non-jurisdictional defects, including an ineffective assistance of counsel claim, unless the ineffective assistance claim affects the voluntariness of the plea." *Wells v. Thaler*, 460 F. App'x 303, 309

(5th Cir. 2012), citing *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). It has been determined that Rachal's plea was voluntary. Therefore, he has waived any conflict-of-interest claim. *See United States v. Palacios*, 928 F.3d 450, 457 (5th Cir. 2019).

Furthermore, the Second Circuit found that Rachal failed to satisfy *Strickland v. Washington*, 466 U.S. 668 (1984). *See Rachal*, 300 So.3d at 492. Because this claim was adjudicated on the merits, the appellate court's *Strickland* determination is subject to "doubly deferential" review. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). The question under § 2254(d) is not whether the federal court believes the state court's *Strickland* determination was incorrect, but whether it was unreasonable, which presents a substantially higher threshold for a petition to meet. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different if counsel had performed reasonably. *Strickland*, 466 U.S. at 687. Where a defendant has entered a guilty plea, *Strickland*'s prejudice prong requires a petitioner to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Both *Strickland* prongs must be satisfied to prevail on an ineffective assistance of counsel claim. *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014), *cert. denied*, 575 U.S. 952 (2015).

Rachal does not assert or establish that, but for the alleged "irreconcilable conflict," he would not have pleaded guilty pursuant to *Alford* and would have instead insisted on going to trial. Rather than allege prejudice, Rachal argues that it should be assumed under *United States v. Cronic*, 466 U.S. 648 (1984). However, *Cronic* requires a "complete denial of counsel"; a denial of counsel at a "critical stage" of the proceedings; a complete failure to subject the State's case to meaningful adversarial testing; other circumstances that might make the presumption of prejudice appropriate. *Id.* at 659. No presumption of prejudice is warranted. Rachal had the benefit of representation by defense counsel at all stages of his proceedings.

Rachal has identified no legitimate conflict, no prejudice, and no unreasonable application of *Strickland*. He cannot meet the requirements for habeas relief under § 2254(d).

### 2. Speedy Trial.

Rachal asserts that he received ineffective assistance of counsel because Andrepont requested unjustified continuances which deprived him of his right to a speedy trial. ECF No. 1-1 at 32. Although Rachal presented this argument to the Second Circuit, the argument to the Louisiana Supreme Court was based on an allegedly incomplete record. The claim is now procedurally defaulted, as discussed above.

Regardless, Rachal was not deprived of his right to speed trial, nor did he receive ineffective assistance as to the issue. Generally, a defendant's guilty plea

waives all nonjurisdictional defects, including alleged violations of his right to a speedy trial. *Tollett v. Henderson*, 411 U.S. 258 (1973); *Nelson v. Hargett*, 989 F.2d 847 (5th Cir. 1993). Rachal pleaded guilty while maintaining his innocence as provided by *Alford* and preserving his right to appellate review as provided by *Crosby*. However, he did not specifically preserve this claim for review. Even if he had, the Second Circuit denied the claim.

The Sixth Amendment guarantees "the right to a speedy and public trial." U.S. Const. amend. VI. This right applies to the states through the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213 (1967). Alleged violations of the right to a speedy trial are assessed by application of factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), which include the length of the delay; the reason for the delay; the defendant's diligence in asserting the right; and prejudice to the defendant. *Id.*, at 530.

Rachal was indicted in 2015, and he pleaded guilty in 2019. Examination of the record shows that many of the delays in this matter are attributed to Rachal. He first asserted the desire to invoke his right to a speedy trial on September 13, 2016, a little over a year after his indictment. ECF No. 37-7 at 237. Trial was set for February 2017, but Rachal said that he wanted to fire Andrepont and file a motion for appointment of new counsel – actions which would necessitate further delay in his proceedings. Rachal was then held in contempt of court after he uttered an expletive to the judge. ECF No. 37-7 at 238.

15

On November 16, 2016, Andrepont obtained a continuance, and Rachal was arraigned for a new charge of battery of a police officer. ECF No. 37-7 at 242. The February trial date was upset, over the State's objection, and reset for June 2017. *Id.* A month before trial, Rachal filed a motion to appoint new counsel and indicated that he would not be ready for trial in June. *Id.* at 246-48. In August 2017, Rachal withdrew the motion for new counsel when the trial court granted his request to represent himself. *Id.* at 50. He would not agree to the State's proposed trial date, stating that he would need more time to prepare. *Id.* at 51.

At a September 2017 hearing, Rachal decided he no longer wanted to represent himself. ECF No. 37-7 at 62. Thus, Andrepont resumed her representation and filed a subpoena duces tecum at Rachal's request. It took over a year for the CPSO to respond to the subpoena. Finally, at the end of 2018, the material was provided to Andrepont, who needed to review the materials. ECF No. 37-7 at 104. As of February 2019, the material was still being reviewed by Andrepont, who also requested time to review several pro se motions filed by Rachal. *Id.* at 108. Therefore, the delays were attributed to Rachal wanting to represent himself, changing his mind, and his insistence that counsel obtain documentation and videos from the jail.

Regardless, Rachal was already incarcerated on other charges prior to his arrest in this case. ECF No. 37-7 at 33. And he received additional charges after his arrest for second-degree murder and arson. ECF No. 37-6 at 244-46. These all

contributed to Rachal's pre-plea incarceration.   Therefore, he received no prejudice from any delay in tendering his plea.

Rachal cannot establish that the state court's determination regarding his speedy trial claim was objectively unreasonable.   There was no speedy trial violation.

Moreover, Rachal cannot establish ineffective assistance.   As the Second Circuit concluded, Rachal does not show that Andrepont's assistance was deficient or that, but for her performance, the outcome would have been different.   Rachal pleaded guilty pursuant to his own proposal.   *Rachal,* 300 So.3d at 492.   Rachal cannot show that this determination was unreasonable.

Rachal complains that Andrepont failed to adopt his motion to quash the indictment but fails to establish that his motion had merit or would have been granted had it been adopted.   Counsel is not ineffective for failing to adopt meritless motions or make meritless arguments.   *Garcia v. Stephens*, 793 F.3d 513, 525 (5th Cir. 2015), *cert. denied*, 577 U.S. 1105 (2016), quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

E.   <u>Rachal fails to establish a *Brady* violation.</u>

Rachal asserts that the State failed to disclose the CPSO files and records concerning the tablet confession, which were exculpatory.   In his pro se brief to the Second Circuit, Rachal argued in part that the State had an obligation under *Brady* to disclose exculpatory evidence, but most of his argument concerned his efforts to issue a subpoena duces tecum and his claim that Andrepont did not file the

subpoena. ECF No. 37-7 at 284-86. Rachal did not raise the same claim in the Louisiana Supreme Court. There, he argued that the record was incomplete and that Andrepont did not file the subpoena, obtain the documents, or provide them to him. He did not argue that the State violated *Brady*. Thus, Rachal did not present the "substantial equivalent" of his claim to all state courts. For the reasons discussed above, the claim is now procedurally defaulted.

Even if the claim was exhausted, it would be denied. In *Orman*, the Fifth Circuit held that habeas relief was unwarranted where the petitioner complained that the State failed to disclose exculpatory evidence before his guilty plea. *Orman*, 228 F.3d at 620-21. Assuming that there was any exculpatory evidence regarding the tablet confession, the alleged failure to disclose prior to Rachal's guilty plea does not warrant habeas relief under Fifth Circuit precedent.

Additionally, Rachal fails to show that the state court's determination that he was deprived of any of the exculpatory evidence was contrary to or an unreasonable application of *Brady*. The transcript establishes that the CPSO provided the information, and Andrepont turned it over to Rachal. ECF No. 37-7 at 128.

### F.    Incomplete Record

Finally, Rachal argues that his Fourteenth Amendment rights were violated because the appellate record did not include audio recordings of the proceedings or the records that CPSO provided to Andrepont. ECF No. 1-1 at 57. Rachal did not present the federal nature of his claim to the state courts. Although he filed two motions to supplement the record on appeal, Rachal did not allege a Fourteenth

18

Amendment violation. ECF No. 37-7 at 193, 328. He referenced "due process" citing the Louisiana Constitution and *Jackson v. Estelle*, 672 F.2d 505 (5th Cir. 1982). ECF No. 37-7 at 196. Rachal also failed to allege a federal constitutional claim in his writ application to the Louisiana Supreme Court. He repeatedly cited the Louisiana constitution to support his claim that the record must be complete. ECF No. 37-8 at 80-82. Rachal's claim is unexhausted and procedurally defaulted.

Even if it was exhausted, the claim is meritless. Violations of state laws are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62 (1991). And Rachal does not establish entitlement to relief under federal law. Although a defendant has the right to adequate appellate review of his conviction based on a sufficiently complete and accurate record, due process does not require a verbatim transcript of the entire proceedings. *Mayer v. City of Chicago*, 404 U.S. 189, 198 (1971). The Second Circuit granted a counseled motion to supplement the record with 10 transcripts and a pro se motion to supplement the record with another five. ECF No. 37-7 at 161, 221. The appellate court ensured the record was sufficient to address Rachal's claims.

Moreover, to state a viable claim for habeas relief due to an incomplete record, a petitioner must prove it caused actual prejudice to his appeal. *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174. Rachal does not establish that he suffered actual prejudice from any alleged shortcomings in the record.

### III. Conclusion

Because Rachal cannot meet the requirements of § 2254(d)(1)-(2), IT IS RECOMMENDED that his Petition for Writ of Habeas Corpus (ECF No. 1) be DENIED and DISMISSED WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A

courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

      SIGNED on Monday, March 27, 2023.

 

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE